UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD LEE MCDONALD, SR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DR. MARLENE HENZE, DR. CATALINO ) <br> BAUTISTA, WARDEN SHERWIN MILES, ) <br> and WARDEN WILLIAMS, ) <br> ) <br> Defendants. ) | No. 20 C 643 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Donald Lee McDonald, Sr., an inmate housed at Stateville Correctional Center ("Stateville"), filed this lawsuit complaining that Defendants Dr. Marlene Henze, Dr. Catalino Bautista, Warden Sherwin Miles, and Warden Williams exhibited deliberate indifference to his back pain on July 18, 2019 by cancelling his medical permit for a daily hot shower. Defendants have filed a motion to dismiss, arguing that McDonald failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Construing Defendants' motion as one for summary judgment, to which McDonald has adequately had the opportunity to respond, the Court finds that McDonald failed to exhaust all available administrative remedies with respect to the claims he brings in this lawsuit and so cannot proceed further with this case.

## BACKGROUND[1]

McDonald, an inmate in the custody of the Illinois Department of Corrections ("IDOC") and housed at Stateville, has suffered from back pain for many years. In response, Stateville medical staff issued him a medical permit for daily showers in 2013. Although Dr. Henze had renewed the permit for daily showers from November 8, 2018 through November 8, 2019, Dr. Henze and Warden Williams signed an order cancelling his daily shower permit on July 18, 2019.[2]

In response to this cancellation, McDonald submitted Offender Grievance 10169 on July 26, 2019, seeking emergency review of the cancellation of his medical shower permit. On August 5, Stateville's chief administrative officer ("CAO") denied Grievance 10169 as an emergency and indicated that McDonald had to pursue his grievance through the normal grievance process.

McDonald then submitted Offender Grievance 10448 on August 15 through the normal process. The portion of the grievance form titled "Counselor's Response (if applicable)" remained blank. Doc. 45-5 at 1. McDonald states that he placed the grievance in an envelope and then placed the envelope in the large blue grievance box in the living unit of the prison. The Stateville Grievance Department stamped Grievance 10448 as received on August 19. On August 22, McDonald received a counseling summary note indicating that his grievance had been forwarded to a counselor for review and response. But instead of receiving a response to

---

[1] Although Defendants styled their motion as one to dismiss, because they rely on matters outside the pleadings, the Court finds it more appropriate to treat it as a motion for summary judgment. Thus, the Court considers the evidence submitted by Defendants, as well as McDonald's additional statement of facts and affidavit. The Court construes the facts in the light most favorable to McDonald, the non-movant.

[2] McDonald did receive another daily shower permit on November 7, 2019, which expired on May 7, 2020. At some point, Stateville officials again revoked his daily shower permit.

the grievance on the merits, on October 7, McDonald received a memorandum from Kelly Ledford, the office coordinator for Stateville's grievance office. The memorandum, titled "Grievance Return," indicated that the grievance office was returning Grievance 10448 to McDonald because, as of December 1, 2018, "all grievances must be placed in the locked box in the living unit" and would "no longer be accepted through institutional mail." Doc. 45-6 at 1. McDonald states that he understood the October 7 memorandum as a denial of his grievance because he had placed Grievance 10448 in the appropriate lockbox.

Therefore, on November 4, McDonald filed an appeal with IDOC's Administrative Review Board (the "ARB"). McDonald submitted Grievance 10448 and the October 7 memorandum, describing that memorandum as the "Grievance Officer's Response, which is false and made up," on the accompanying proof/certificate of service form. Doc. 45-7 at 1. The ARB received McDonald's appeal on November 8. On November 15, the ARB issued a "Return of Grievance or Correspondence" notice to McDonald, indicating that it was returning Grievance 10448 to him because the ARB required additional information. Specifically, the ARB requested that McDonald provide the "original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable" and "a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely." Doc. 45-8 at 1. McDonald did not provide any additional documentation to the ARB. He states that he took the November 15 communication as a final determination of his appeal because he had already provided the ARB with Grievance 10448 and the response he received from the Stateville grievance office. Instead of further pursuing his grievance administratively, McDonald filed this case complaining about the revocation of his daily shower permit on January 29, 2020.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

**ANALYSIS**

Defendants argue that McDonald cannot proceed on his claims because he failed to exhaust his administrative remedies as required by the PLRA. *See* 42 U.S.C. § 1997e(a) ("No

action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement exists to give correctional officials the opportunity to address complaints internally before the initiation of a federal suit. *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002); *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). To have exhausted his administrative remedies, McDonald must have grieved his claim through "all steps that the agency holds out," and he must have "do[ne] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). An inmate "who does not properly take each step within the administrative process has failed to exhaust" administrative remedies and thus "is foreclosed by § 1997e(a) from litigating" his claims. *Pozo*, 286 F.3d at 1024.

IDOC's rules concerning the form and timeliness of grievances apply here. *Id.* at 1023–25 (proper use of the facility's grievance system requires a prisoner to "file complaints and appeals in the place, and at the time, the prison's administrative rules require"). IDOC has a three-step process for pursuing a non-emergency grievance. Ill. Admin. Code tit. 20, § 504.800 *et seq.* First, the inmate should attempt to resolve the issue through his counselor. *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 831 (7th Cir. 2020). If that fails, the inmate must file a written grievance with a grievance officer within sixty days after discovering the issue. *Id.* The grievance officer then considers the grievance, reporting findings to the CAO within two months of receipt of the grievance "when reasonably feasible under the circumstances." Ill. Admin. Code tit. 20, § 504.830(e). The CAO then reviews the grievance officer's findings and recommendations and provides the inmate with a decision in writing. *Id.* If the grievance officer

denies the grievance and the CAO affirms that decision, the inmate must file an appeal with the ARB. *Williams*, 957 F.3d at 831. The ARB reviews the appeal and submits a written report of its findings and recommendations to the IDOC Director, who reviews that report and makes a final determination on the grievance. Ill. Admin. Code tit. 20, § 504.850(e). Once the inmate receives the IDOC Director's final determination, he has exhausted his administrative remedies and may turn to the court system. *Id.*; *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Defendants bear the burden of proving McDonald's failure to exhaust. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018) ("It was not Davis's burden to establish that the grievance process was unavailable; it was the officers' burden to show that Davis did not exhaust available remedies."). Typically, the Court conducts a hearing to resolve contested issues related to PLRA exhaustion. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). But the Court need not hold a hearing where it can resolve the question of exhaustion based on affidavits and documentary evidence. *See Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015); *Nesbitt v. Villanueva*, No. 09 C 6080, 2011 WL 737617, at *3 (N.D. Ill. Feb. 24, 2011). Here, although the parties disagree as to certain facts, the Court does not find it necessary to conduct a *Pavey* hearing because the disputed facts do not affect the outcome. *See Landis v. Ciolli*, No. 20 CV 50168, 2021 WL 979158, at *4 (N.D. Ill. Mar. 16, 2021) ("Although the parties disagree as to many of the facts concerning the 'availability' of the administrative exhaustion process and Landis's efforts to pursue those administrative procedures, none of those disputed facts are outcome-determinative.").

Defendants first argue that McDonald did not properly exhaust because he did not wait for a response from his correctional officer before submitting Grievance 10448 to the grievance office and instead improperly left the section titled "Counselor's Response" blank. But

Defendants do not point to anything in IDOC's grievance procedures that required McDonald to have this section completed before he submitted the grievance. And the grievance form belies their argument, indicating that the section need only be completed "if applicable." *See* Doc. 45-5 at 1. Further, Ledford did not identify McDonald's failure to obtain a counselor's response as the reason for returning Grievance 10448 to McDonald without a merit-based decision even though one of the pre-preprinted options on the grievance return memorandum states that "[i]t appears that no attempt has been made to resolve the issue as required by DR 504F." Doc. 45-6 at 1. Thus, Defendants have not carried their burden to demonstrate that McDonald's failure to obtain a response from a counselor before submitting his grievance warrants a finding that he did not exhaust his claim. *See Davis*, 881 F.3d at 985–86 (rejecting argument that an inmate did not exhaust administrative remedies where the "grievance coordinator never marked the checkbox on the return form identifying a failure to attempt an informal resolution as one of the reasons she returned Davis's grievance").

Next, Defendants argue that McDonald failed to exhaust because he did not obtain a response from Stateville's grievance office before filing his ARB appeal and ultimately never received a final determination on the merits that would have allowed him to file suit. McDonald, on the other hand, contends that Ledford's memorandum returning his grievance constituted a denial of his grievance, he properly submitted all required documents in connection with his appeal, and the ARB's return of grievance constituted a final determination. Initially, McDonald's subjective beliefs about whether he properly exhausted his grievance play no role in the exhaustion analysis. Section 1997e(a) "says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them."

7

*Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)); *see also Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) ("[W]e are not holding that a prisoner's subjective unawareness of a grievance procedure excuses his non-compliance. The PLRA does not excuse a failure to exhaust based on a prisoner's ignorance of administrative remedies, so long as the prison has taken reasonable steps to inform the inmates about the required procedures.").[3]

Here, Ledford initially returned his grievance based on his alleged failure to comply with Stateville's grievance procedures. And the ARB then returned McDonald's grievance for failure to provide all required documentation and indicated the steps McDonald needed to take for the ARB to consider his appeal. The return of his grievance and appeal on procedural grounds demonstrates that he never received a final determination on the merits of his grievance. *See Gakuba v. Pannier*, No. 19-CV-1274, 2021 WL 1165114, at *5 (S.D. Ill. Mar. 26, 2021) ("The grievance was also returned on a 'Return of Grievance or Correspondence' form rather than a grievance response form, further demonstrating that it was not decided on the merits. Because the grievance was returned to Gakuba on procedural grounds and not decided on the merits, the Court finds that Gakuba failed to exhaust his administrative remedies as to the October 16 grievance." (citation omitted)). And although McDonald may have disagreed with the ARB's reasoning, his decision not to follow the stated directions does not allow the Court to find he exhausted his administrative remedies. *See Truidalle v. Brookhart*, No. 3:19-cv-00743, 2021 WL 4342124, at *5 (S.D. Ill. Aug. 20, 2021) ("To the extent Plaintiff chose to disregard written instructions and rely on information from other individuals and/or his own beliefs, his failure to follow proper procedures is not excused."); *Gibson v. Wexford Health Sources, Inc.*, No. 18-CV-

---

[3] McDonald does not argue that he did not know of the grievance procedures, likely because he has made use of them on numerous occasions during his incarceration.

8

00585-JPG, 2020 WL 2769991, at *3 (S.D. Ill. May 28, 2020) (no exhaustion where the plaintiff did not respond to the ARB's request for additional documentation and explained only that he did not have any additional documentation to provide to the ARB).

The Court's inquiry does not end there, however, because McDonald appears to argue that he could not follow the proper procedures because administrators at Stateville and the ARB prevented him from doing so, thus rendering IDOC's administrative remedies unavailable to him. *See Ross v. Blake*, 578 U.S. 632, 643 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). Although not an exhaustive list, the Supreme Court has identified three situations where administrative remedies become unavailable: (1) where prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use," in other words, where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*; *Ramirez*, 906 F.3d at 538.

McDonald essentially argues that IDOC administrators mishandled his grievance and thus prevented him from exhausting.[4] *See Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) ("Administrative remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct' prevents prisoners from pursuing administrative remedies." (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006))). He maintains that he initially submitted

---

[4] McDonald does not argue that IDOC's grievance rules are "so opaque that [the grievance process] becomes, practically speaking, incapable of use" so as to render the process unavailable. *Ross*, 578 U.S. at 643. Although this could occur where, for example, the warden and the ARB "move[d] the goal posts while [the inmate] was in the middle of his case and suddenly announce[d] that special new requirements applied to him," *Williams*, 957 F.3d at 835, here, the requirements McDonald allegedly failed to follow existed before he filed his grievance and remained the same throughout the process.

9

Grievance 10448 as required by placing it in the lockbox and that he could not have submitted additional documentation to the ARB because he had not received any additional documents. *See Lisle v. Keller*, 803 F. App'x 926, 928 (7th Cir. 2020) ("As the state defendants concede, his lack of compliance with the Board's instructions would have been irrelevant if he never received a response to the appeal he filed with the grievance officer."); *cf. Davis*, 881 F.3d at 986 (concluding that, where grievance policy required an unprocessed grievance to include an indication of how the inmate could correct the problem and inmate did not receive such information, the inmate took all available steps to exhaust the grievance because "the policy does not provide for an appeal from a *refusal to process* a grievance").

But the Supreme Court has indicated that an "inmate should err on the side of exhaustion" when faced with an "administrative process [that] is susceptible of multiple reasonable interpretations." *Ross*, 578 U.S. at 643. And here, even accepting McDonald's version of events, the record indicates that McDonald could have refiled his grievance, particularly given that he remained without access to a daily shower permit at the time he received Ledford's memorandum. *See Haywood v. Baylor*, 804 F. App'x 401, 403 (7th Cir. 2020) ("Because refiling was available to him, Haywood's failure to exhaust is not excusable."). McDonald suggests that the propriety of refiling remains an open question, given that IDOC could have deemed a refiled grievance untimely and IDOC had already mishandled his initial grievance, but such speculation about the futility of refiling does not excuse McDonald's failure to attempt to address the identified bases for the return of his grievance and appeal. *See Steiskal v. Lewitzke*, 553 F. App'x 611, 616 (7th Cir. 2014) ("He submitted no evidence that prison staff prevented him from resubmitting his grievance or that he was incapable of doing so. His subjective belief that he was being thwarted was insufficient to create a genuine issue of material

10

fact." (citation omitted)); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) ("As for the possibility that administrative remedies could be declared futile *ex ante*, without ever being tried: what would be the point of asking judges to be seers? Then the simplicity of § 1997e(a) would be lost, and instead of requiring exhaustion of administrative remedies it would lead to guesswork about counterfactual situations. No one can *know* whether administrative requests will be futile; the only way to find out is to try."); *Edens v. O'Brien*, No. 14 CV 50056, 2016 WL 4191756, at *9 (N.D. Ill. Aug. 9, 2016) ("[P]erceived futility is no excuse when procedural avenues remain available to a grievant; he must make the attempt."). Therefore, because the record demonstrates that IDOC did not render any administrative remedies unavailable to McDonald and that McDonald failed to properly comply with IDOC's grievance procedures, McDonald did not exhaust his administrative remedies as required so as to allow him to proceed with this case.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [45], which the Court has treated as a motion for summary judgment. The Court dismisses this case without prejudice for failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). Case terminated.

Dated: January 31, 2022

SARA L. ELLIS
United States District Judge

11